**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| L.S., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON, *et al.*,<br><br>Defendants. | Civil Action No. 25-18012 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Johnson & Johnson ("J&J"), Janssen Pharmaceuticals, Inc. ("Janssen"), and Intra-Cellular Therapies, Inc.'s ("ITCI," and together with J&J and Jannsen, "Defendants") Motion to Dismiss. (ECF No. 33.) Plaintiffs L.S., M.P., A.G., M.W., S.C., and T.W. (collectively, "Plaintiffs") opposed (ECF No. 34), and Defendants replied (ECF No. 35). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND[1]

### A. Factual Background

Plaintiffs, individually and on behalf of all other similarly situated consumers, bring this action against Defendants because Defendants: (1) tracked Plaintiffs' sensitive health information

---

[1] The Court accepts the factual allegations in Plaintiffs' Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

("SHI"); and (2) shared Plaintiffs' SHI with third parties without Plaintiffs' consent. (*See generally* Compl., ECF No. 1.) Plaintiffs are individuals diagnosed with certain medical conditions and prescribed medications marketed and sold by Defendants, such as: (1) Xarelto; (2) Caplyta; (3) Topamax; (4) Simponi; (5) Tremfya; and (6) Remicade. (*Id.* ¶¶ 16-52.) Plaintiffs each visited marketing websites maintained by Defendants for their respective pharmaceutical products (the "Pharmaceutical Websites") to "obtain information regarding [their prescribed drugs], register for an account, and apply for a Savings Card." (*Id.* ¶¶ 4, 18, 25, 32, 39, 46, 53, 58-60 101.) Unbeknownst to Plaintiffs, through the Pharmaceutical Websites, Defendants collected and transmitted Plaintiffs' SHI to unauthorized third parties, such as Alphabet, Inc. ("Google"), Meta Platforms, Inc. ("Facebook"), Microsoft Corp. ("Microsoft"), and ByteDance, Inc. ("TikTok," and together with Google, Facebook, and Microsoft, the "Tracking Tool Providers"). (*Id.* ¶¶ 6, 102, 121.)

The Tracking Tool Providers compile as much information as possible about consumers, such as their "location, age, race, interests, hobbies, life events[,] . . . political affiliation, education level, home ownership status, marital status, household income, [or] type of employment," to fuel their hyper-precise targeted advertising enterprise. (*Id.* ¶¶ 7, 9, 77.) Additionally, the Tracking Tool Providers offer website operators access to their proprietary marketing, advertising, and customer analytics products, such as Google Analytics, Google AdSense, Google Tag Manager, Meta Business Suite, Facebook Ads, Microsoft Advertising, Big Ads, Xandr, and TikTok Pixel (collectively, the "Business Tools"). (*Id.* ¶ 8.) By using the Tracking Tool Providers' Business Tools, website operators can leverage enormous databases of consumer information for the purposes of: (1) "deploying targeted advertisements"; (2) "performing minute analyses of their customer bases"; and (3) "identifying new market segments." (*Id.*) Users of the Business Tools,

like Defendants, must install the Tracking Tool Providers' surveillance software onto their websites, which track a website visitor's pixels[2] and cookies.[3] (*Id.* ¶ 9.) Through the combination of pixels and cookies, the Tracking Tool Providers can link all of the information collected on the Pharmaceutical Website to the user's identity and acquire information about the user's device and browser characteristics, which is often unique to that user. (*Id.* ¶¶ 96, 99-100.) Accordingly, when Defendants use the Business Tools, they are choosing to participate in the Tracking Tool Providers' mass surveillance network and can benefit from the collection of user data. (*Id.* ¶¶ 10, 82.)

After Plaintiffs used the Pharmaceutical Websites, they "began seeing targeted online advertisements for products and services related to [their] medical condition[s]." (*Id.* ¶¶ 19-22, 26-29, 32-36, 39-43, 46-50, 53-57.) The pixels and cookies installed on the Pharmaceutical Websites were undetectable to Plaintiffs, and Plaintiffs were otherwise not shown any disclaimers or warnings that their SHI would be disclosed by Defendants without their consent. (*Id.* ¶¶ 122, 126-28.) In exchange for allowing the Tracking Tool Providers to collect Plaintiffs' SHI, Defendants received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms. (*Id.* ¶ 131.) Such unauthorized disclosure diminished any value that Plaintiffs' SHI held. (*Id.* ¶¶ 136-37.)

---

[2] A pixel is a "small piece of code . . . placed onto the website or ad[vertisement] and define[s]" the pixel operator's tracking goals. (Compl. ¶ 86.) Pixel tracking can be monetized by: (1) collecting data "to improve the company's own marketing campaigns" or (2) further optimizing a company's " ad[vertising] targeting systems and charging other companies to use its advertising offerings." (*Id.*) Pixels can collect a lot of information about individual online behaviors, including "webpages viewed by the user, the amount of time spent . . . on specific webpages, the . . . buttons and hyperlinks that the user clicks," and more. (*Id.* ¶ 87.)

[3] Cookies are small files saved by a user's web browser, which are used to identify the user as they make visits to a website, while pixels request identifying information from those cookies previously installed on the user's web browser. (*Id.* ¶¶ 92, 95.)

### B. Procedural History

Plaintiffs filed their Complaint against Defendants on November 26, 2025. (*See generally* Compl.) Plaintiffs seek to certify a nationwide class and five subclasses across New Jersey, Michigan, Illinois, Indiana, and Arkansas comprised of individuals who have used Defendants' "Pharmaceutical Website[s] to apply for a Savings Card, create a Patient Portal account and/or apply to a pharmaceutical support program, and whose [SHI] was disclosed or transmitted to one of the Tracking Tool Providers, or any other unauthorized third party." (*Id.* ¶¶ 179-80.)

Plaintiffs assert nine counts in the Complaint against Defendants for: (1) common law invasion of privacy ("Count One"); (2) breach of confidence ("Count Two"); (3) breach of fiduciary duty ("Count Three"); (4) negligence ("Count Four"); (5) breach of implied contract ("Count Five"); (6) unjust enrichment ("Count Six"); (7) violations of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C § 2511(1), *et seq.* ("Count Seven"); (8) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.* ("Count Eight"); and (9) violations of the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code Ann. § 24-05-0.5-1, *et seq.* ("Count Nine"). (*Id.* ¶¶ 192-284.)

The parties stipulated to a briefing schedule which contemplated e-filing their respective moving, opposition, and reply papers on April 3, 2026. (*See* Scheduling Order, ECF No. 22.) Accordingly, on April 3, 2026: (1) Defendants filed their Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure[4] (Defs.' Mot. to Dismiss, ECF No. 33; *see generally* Defs.' Moving Br., ECF No. 33-1); (2) Plaintiffs filed their opposition brief (Pls.' Opp'n Br., ECF No. 34); and (3) Defendants filed their reply brief (Defs.' Reply Br., ECF No. 35).

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a matter for want of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). "Thus, '[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true." *In re Horizon Healthcare Servs.*

*Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[5]

**B. Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the

[5] Although Defendants lodge a factual attack on jurisdiction (Defs.' Moving Br. 15), the Court construes it as a facial challenge because an answer has not been filed. *See Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (explaining that a defendant's motion was a "facial attack" because defendant "filed the attack before it filed any answer to the [c]omplaint or otherwise presented competing facts"); *Curlin Med. Inc. v. ACTA Med., LLC*, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct, 27, 2016) ("[T]he Third Circuit's recent cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed." (citations omitted)).

defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

Defendants seek dismissal of Plaintiffs' Complaint because: (1) Plaintiffs lack Article III standing; and (2) Plaintiffs fail to state a claim upon which relief can be granted. (*See generally* Defs.' Moving Br.) Before the Court turns to the merits of Plaintiffs' claims, it must address the threshold jurisdictional issue of Article III standing. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278-80 (3d Cir. 2014).

### A. Article III Standing

Under Article III, standing exists if the plaintiff has: "(1) suffered an [injury-in-fact], (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).[6] "The requirements for an injury-in-fact are well established: a plaintiff must show that [he or she has] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 223 (D.N.J. 2022) (quoting *Lujan*, 504 U.S. at 560). On a motion to dismiss, however, the Third Circuit has explained "that the '[i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege [ ] some specific,

---

[6] If Article III standing cannot be established on the part of the named plaintiffs, a district court "must dismiss a putative class action for lack of subject matter jurisdiction." *Finkleman v. Nat'l Football League*, 810 F.3d 187, 195 (3d Cir. 2016).

identifiable trifle of injury.'" *Blunt*, 767 F.3d at 278 (alterations in original) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)).

"Intangible harms—like those caused by a violation of a privacy statute—can give rise to 'concrete injuries.'" *Santoro v. Tower Health*, --- F.4th ---, 2026 WL 2543842, at *4 (3d Cir. Aug. 28, 2026) (citing *In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 432-34 (3d Cir. 2026)). To determine whether an intangible harm gives rise to a concrete injury, courts "ask whether plaintiffs 'have identified a close historical or common-law analogue for their asserted injury,' and . . . 'compar[e] the kind of harm a plaintiff alleges with the kind of harm caused by a comparator tort at common law." *Id.* (second alteration in original) (citing *In re BPS Direct*, 175 F.4th at 429). Although not readily identifiable on the face of the Complaint, Plaintiffs appear to analogize their injuries for intrusion of privacy to the claims of: (1) intrusion upon seclusion; and (2) publication of private facts.[7] (*See* Pls.' Opp'n Br. 13-15.) For the reasons stated below, Plaintiffs have established Article III standing under their intrusion upon seclusion theory.[8]

Under New Jersey law, "[t]he tort of intrusion upon seclusion imposes liability on [o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another . . . if the intrusion would be highly offensive to a reasonable person." *Corson v. Accts. Receivable Mgmt., Inc.*, No. 13-1903, 2013 WL 4047577, at *10 (D.N.J. Aug. 9, 2013) (second and third alteration in original) (quotation marks and citations omitted). "Information about one's body and

[7] Count One of Plaintiffs' Complaint asserts one cause of action for invasion of privacy under two different tort claims for which relief is sought. Styling Count One in this manner constitutes group pleading. *See Richardson v. EzriCare, LLC*, No. 23-3498, 2024 WL 4349687, at *5 (D.N.J. Sep. 30, 2024) (explaining that one form of group pleading exists where a complaint does not separate each cause of action or claim for relief into separate counts).

[8] Plaintiffs' injury analogous to the tort of publication of private facts fails because Plaintiffs have not alleged that their SHI was disclosed to the public at large, which is required to establish the harm for that tort. *In re BPS Direct*, 175 F.4th at 431.

state of health is matter which the individual is ordinarily entitled to retain within the private enclave where he [or she] may lead a private life." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) (citation modified). Moreover, individuals "have an 'imperative need for confidence and trust' in their private communications with healthcare providers about their health conditions." *Santoro*, 2026 WL 2543842, at *4 (citation omitted).

Here, the Complaint alleges that Plaintiffs shared their SHI with Defendants, who are entities covered under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*, and, Defendants, in turn, shared Plaintiff's SHI with the third-party Tracking Tool Providers by using their Business Tools without consent. (Compl. ¶¶ 4, 6, 18, 25, 32, 39, 46, 53, 101-02, 121, 138, 144, 147-48.) Accepting Plaintiffs' allegations as true, Plaintiffs' proffered injury—the disclosure of one's sensitive and confidential health information to a third party—is sufficiently analogous to the type of harm caused by an intrusion upon seclusion for standing purposes. *Cf. Santoro*, 2026 WL 2543842, at *4 (citing *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024)); *accord In re BPS Direct*, 175 F.4th at 432 & n.6 (noting that the kind of harm vindicated by the intrusion-upon-seclusion tort is rather broad).

Accordingly, the Court concludes that Plaintiffs have established Article III standing on the face of the pleadings. The Court now turns to Plaintiffs' claims.

### B. Failure to State a Claim[9]

#### *1. Common Law Invasion of Privacy (Count One)*

Count One, broadly, alleges that Defendants invaded Plaintiffs' privacy under the common law. (Compl. ¶¶ 192-203.) New Jersey recognizes four invasion of privacy torts: "(1) unreasonable

---

[9] Neither party disputes that New Jersey law governs Plaintiffs' substantive claims. (Defs.' Moving Br. 17-18 ("Defendants will apply New Jersey law for purposes of this motion"); Pls.' Opp'n Br. 15, 17, 22, 23 (applying New Jersey law)); *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (stating that courts sitting in diversity apply the substantive law of the forum state).

intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to one's private life; and (4) false light invasion of privacy." *Dessources v. Manning*, No. 18-9324, 2021 WL 3879094, at *14 (D.N.J. Aug. 31, 2021) (quoting *Jevic v. Coca Cola Bottling, Co. of N.Y., Inc.*, No. 89-4431, 1990 WL 109851, at *8 (D.N.J. June 6, 1990)). Here, Plaintiffs contend that they have stated claims for intrusion upon seclusion and publication of private facts, (Pls.' Opp'n Br. 13-17), and the Court will address each claim in turn.

**a. Intrusion Upon Seclusion**

To state a claim for intrusion upon seclusion, a plaintiff must allege: (1) an intentional intrusion; (2) upon the seclusion of another; (3) that is highly offensive to a reasonable person. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 293 (3d Cir. 2016). "Intrusion upon seclusion claims must clear a 'high threshold.'" *Haig v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 25-15438, 2026 WL 1453869, at *5 (D.N.J. May 22, 2026) (quoting *Stengart v. Loving Care Agency, Inc.*, 990 A.2d 650, 660 (N.J. 2010)). Specifically, a plaintiff must allege that the intrusion "would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object." *Stengart*, 990 A.2d at 660 (quoting Restatement (Second) of Torts § 652B cmt. d.).

Here, the Complaint alleges that Plaintiffs communicated SHI to Defendants with the reasonable expectation that Defendants would keep that information private and secure, and that Defendants' interception and disclosure of Plaintiffs' SHI without consent to the Tracking Tool Providers was highly offensive to a reasonable person. (Compl. ¶¶ 193-99.) Defendants submit that the Court should consider certain privacy banners, privacy policies, and sign-up consent flows (the "Consent Documents") that appeared on the Pharmaceutical Websites as integral to the Complaint. (*See* Defs.' Moving Br. 11-13.) Defendants thus contend that Plaintiffs fail to state a claim for intrusion upon seclusion because, as a result of the Consent Documents appearing on the

Pharmaceutical Websites, Plaintiffs "necessarily consented" to Defendants' actions and voluntarily provided their private information to Defendants. (*See id.* at 12-13, 18-20.) Upon review of the pleadings, however, the Court concludes that Defendants' argument is premature at the motion to dismiss stage.

*Stevens v. TD Bank, N.A.* instructive. In *Stevens*, the plaintiff accessed his online banking account through the defendant's website, and the defendant embedded a hidden tracking code developed by Meta and Google onto its website. No. 24-8311, 2026 WL 1878514, at *1 (D.N.J. June 30, 2026). The plaintiff alleged that the defendant transmitted the plaintiff's cookies and data to Meta and Google and, in turn, those entities used that information for marketing and advertising purposes. *Id.* at *1-2. On a motion to dismiss for failure to state a claim, the defendant argued that the plaintiff expressly consented to the challenged disclosures. *Id.* at *5. The court in *Stevens* concluded that the defendant's consent-based defense "depend[ed] . . . on the existence of the parties' agreements, privacy notices, and disclosures, [as well as] the legal and factual conclusion that those documents authorized the specific disclosures," and deemed the issue better suited for summary judgment. *Id.* at *6.

Like *Stevens*, success on Defendants' argument hinges upon the existence of the Consent Documents and the Court's acceptance of the factual and legal contentions flowing from those documents. But the Court's consideration of documents integral to the Complaint can only go so far.[10] "When the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342

---

[10] Moreover, Plaintiffs dispute the authenticity of the Consent Documents (Pls.' Opp'n Br. 3-6.), leaving the Court unable to consider them at the motion to dismiss stage. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining that "a court may [only] consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

(3d Cir. 2022). Here, Defendants' Consent Documents are at odds with the facts pled because Plaintiffs alleged that they were not shown any disclaimers or warnings indicating that their SHI would be tracked and disclosed by Defendants. (Compl. ¶¶ 122, 126-28.)

Accordingly, the Court will not dismiss Count One to the extent it proceeds under an intrusion upon seclusion theory. The Court next turns to Plaintiffs' claim for publication of private facts.

**b. Publication of Private Facts**

Under New Jersey law, to state a claim for publication of private facts, a plaintiff must allege that: "[(1)] the matters revealed were actually private[; (2)] dissemination of such facts would be offensive to a reasonable person[; and (3)] there is no legitimate interest of the public in being apprised of the facts publicized." *G.D. v. Kenny*, 15 A.3d 300, 320 (N.J. 2011) (citing *Romaine v. Kallinger*, 537 A.2d 284, 299 (N.J. 1988)). For these claims, an allegation of publication is critical. *Foley v. Medicredit, Inc.*, No. 21-19764, 2022 WL 3020129, at *3 (D.N.J. July 29, 2022) (citation omitted). Publication means that the "information [was communicat[ed] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge[.]" *Id.* (citation omitted).

Here, the Complaint alleges that Plaintiffs' SHI was transmitted to the Tracking Tool Providers and, as a result, Plaintiffs, alone, received targeted advertisements regarding their medical conditions. (Compl. ¶¶ 26-29, 32-36, 39-43, 46-50, 53-57, 193-99.) Defendants contend that dismissal is appropriate because the disclosure did not reach the public at large. (Defs.' Moving Br. 20-21.) The Court agrees. Plaintiffs do not allege that their information was publicized to the public at large. *See McGill v. Shackleford*, No. 26-3646, 2026 WL 1662634, at *2 (D.N.J. Jun. 9, 2026) (dismissing publication of private facts claim because the pleadings lacked allegations

that the facts "were actually available to the general public"); *Nuamah-Williams v. Frontline Asset Strategies, LLC*, No. 21-15440, 2023 WL 1470057, at *3 (D.N.J. Feb. 2, 2023) (dismissing claim for publication of private facts because "[p]laintiff has failed to establish that [the defendant's] disclosure of information . . . [constituted] publicity to the general public"); *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3574881, at *4 (D.N.J. July 25, 2018) (dismissing public disclosure of private facts counterclaim because the court could not "conclude that there was any publication or dissemination").

The Court, accordingly, dismisses Count One of the Complaint without prejudice for failure to state a claim upon which relief can be granted to the extent it asserts a publication of private facts claim.

2. *Breach of Confidence (Count Two)*

As previously noted, *supra* n.9, both parties agree that New Jersey law governs the Court's inquiry. New Jersey, however, does not recognize the common law tort of breach of confidence, and the cases upon which Plaintiffs place their reliance apply Pennsylvania law. (*See* Pls.' Opp'n Br. 17-18 (first citing *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (applying Pennsylvania law); then citing *Vorhees v. Tolia*, No. 16-8208, 2020 WL 1272193, at *10 (D.N.J. Mar. 17, 2020) (relying on *Kamal*, 918 F.3d at 114)); *see In re Am. Fin. Res., Inc. Data Breach Litig.*, No. 22-1757, 2023 WL 3963804, at *7 (D.N.J. Mar. 29, 2023) (dismissing breach of confidence claim and "declin[ing] to find that such a claim is permitted under New Jersey law[ ] without any authority.").

Accordingly, Count Two is dismissed without prejudice for failure to state a claim upon which relief can be granted.

*3. Breach of Fiduciary Duty (Count Three)*

To state a claim for breach of fiduciary duty under New Jersey law, a plaintiff must adequately allege that: "(1) the defendant had a duty to the plaintiff[;] (2) the duty was breached[;] (3) injury to plaintiff occurred as a result of the breach[;] and (4) the defendant caused that injury." *Namerow v. PediatriCare Assocs., LLC*, 218 A.3d 839, 846 (N.J. Super. Ct. Ch. Div. 2018).

Here, Plaintiffs' Complaint alleges that: (1) Defendants are healthcare providers that offer medical support to their website users; (2) website users register to use Defendants' product through a "Patient Portal"; (3) Defendants became fiduciaries by undertaking and guarding Plaintiffs' SHI; (4) Defendants breached that duty by transmitting SHI to unauthorized third parties for profit; and (5) Defendants' unauthorized disclosure diminished the value of Plaintiffs' SHI. (Compl. ¶¶ 5, 11, 131, 137, 213-17.) Although Defendants contend that Count Three should be dismissed because Defendants do not have a fiduciary relationship with Plaintiffs (Defs.' Moving Br. 23-24), the question of whether a fiduciary relationship exists is one of law that is better suited for a motion for summary judgment. *See Township of W. Deptford v. Fulton Bank N.A.*, No. A-1719-12T2, 2013 WL 6799936, at *3 (N.J. Super. Ct. App. Div. Dec. 26, 2013) ("The question of whether a fiduciary duty exists is a matter of law."); *Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1288 (2015) (noting that "[p]urely legal questions" are "particularly suited for summary judgment").

Therefore, taking Plaintiffs' allegations as true, Plaintiffs have stated a claim for breach of fiduciary duty.

*4. Negligence (Count Four)*

To state a negligence claim under New Jersey law, a plaintiff must allege: "(1) that the defendant owed [a] duty of care to the plaintiff[;] (2) that the defendant breached that duty[;]

(3) that the breach was a proximate cause of the plaintiff's injuries[;] and (4) that the plaintiff suffered actual compensable injuries as a result." *Hirsch v. Miles*, No. 21-12246, 2022 WL 395816, at *3 (D.N.J. Feb. 9, 2022) (quoting *Kubert v. Best*, 75 A.3d 1214, 1222 (N.J. Super. Ct. App. Div. 2013)).

Here, the Complaint alleges that: (1) Defendants had a duty of care to use reasonable means to secure and safeguard Plaintiffs' SHI from unauthorized disclosure under HIPAA; (2) Defendants breached that duty by tracking and disclosing SHI to the Tracking Tool Providers; and (3) Plaintiffs' SHI has financial value that was lost due to the disclosure. (Compl. ¶¶ 102, 133-38, 218-225.) Defendants argue that they do not owe a duty of care to Plaintiffs. (Defs.' Moving Br. 24-25.) The existence of a duty of care is a question of law. *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (citing *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212 (N.J. 1996)). As previously discussed, questions of law are better suited for summary judgment motions. *Badiali*, 107 A.3d at 1288.

Accordingly, Plaintiffs have stated a plausible claim for negligence.

*5. Breach of Implied Contract (Count Five)*

"Implied-in-fact contracts are formed by conditions manifested by words and inferred from circumstances, thus entailing consideration of factors such as oral representations . . . and party conduct." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007). To form an implied contract, a plaintiff must demonstrate "mutual assent" of the parties. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *19 (D.N.J. Dec. 16, 2021) ("Mutual assent is an essential element of an implied contract claim[.]"); *Adkins v. Everest Glob. Servs., Inc.*, No. 23-4, 2024 WL 3887127, at *11 (D.N.J. Aug. 21, 2024) ("To form an implied contract, a plaintiff must demonstrate 'mutual assent' of the parties." (citation omitted)).

Here, the Complaint alleges that: (1) Plaintiffs and Defendants entered into an implied contract under which Defendants agreed not to disclose Plaintiffs' SHI without consent; (2) Plaintiffs would not have entrusted Defendants with their SHI in the absence of an implied contract; and (3) Defendants breached this promise by disclosing Plaintiffs' SHI to third parties without consent. (Compl. ¶¶ 228-31.) Defendants argue that dismissal of Count Five is warranted because "Plaintiffs do not allege any facts to establish the formation of an implied contract that can be inferred from conduct between" the parties. (Defs.' Moving Br. 25.) The Court agrees. Plaintiffs' Complaint is devoid of any facts regarding Defendants' promises, policies, or procedures to safeguard Plaintiffs' SHI from which the Court can infer the existence of an implied contract. *See Am. Med.*, 2021 WL 5937742, at *19 (explaining that "the fact that a defendant required plaintiffs to provide personal information does not alone support the inference that the parties agreed for the defendant to secure this information"); *Adkins*, 2024 WL 3887127, at *12 (dismissing breach of implied contract claim where the plaintiff "provide[d] no information regarding [the d]efendant's privacy agreements on its websites, or any standard safeguards to which [the d]efendant agreed when [the p]aintiff purchased services[.]").

Accordingly, the Court dismisses Count Five without prejudice for failure to state a claim upon which relief can be granted.

*6. Unjust Enrichment (Count Six)*

Under New Jersey law, an unjust enrichment claim requires a plaintiff to plead that: (1) the "defendant received a benefit and that retention of that benefit without payment would be unjust"; (2) "the plaintiff expected remuneration"; and (3) the defendant's "failure to give remuneration unjustly enriched the defendant." *EnviroFinance Grp., LLC v. Env't Barrier Co.*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) (internal quotation marks and citation omitted).

Here, the Complaint alleges that: (1) Plaintiffs conferred a monetary benefit on Defendants in exchange for healthcare services by providing their SHI; (2) Defendants profited from Plaintiffs' SHI by exchanging it for marketing and advertising services; and (3) Defendants enriched themselves by obtaining the inherent value of Plaintiffs' SHI. (Compl. ¶¶ 239-45.) As Defendants recognize (Defs.'s Moving Br. 27), the Complaint fails to allege facts upon which the Court can infer that Plaintiffs expected remuneration when they provided Defendants with their SHI. Without any factual allegations plausibly establishing that Plaintiffs expected remuneration, their unjust enrichment claims become duplicative to their tort claims, and therefore, must be dismissed. *See Hardy v. Volkswagen Grp. of Am., Inc.*, No. 24-8251, 2025 WL 1409820, at *19 (D.N.J. May 15, 2025) (explaining that "where a plaintiff asserts an unjust enrichment cause of action along with [other] tort claims and there appear to be no allegations that the plaintiff expected or anticipated remuneration from the defendant, the unjust enrichment claim should be dismissed" (alteration in original) (citation omitted)); *Pereira v. Azevedo*, No. 12-907, 2013 WL 1655988, at *6 (D.N.J. Apr. 17, 2013) (dismissing unjust enrichment claim because it sounded in tort and collecting cases).

Accordingly, the Court dismisses Count Six without prejudice for failure to state a claim upon which relief can be granted.

7. *Violation of the ECPA (Count Seven)*

To plead a violation of the ECPA, a plaintiff must allege that the defendant "'(1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (quoting *In re Pharmatrak, Inc. Priv. Litig.*, 329 F.3d 9, 18 (1st Cir. 2003)). An exception to ECPA liability lies where the person carrying out the alleged interception "is a party to the communication or where one of the parties to the communication has given prior consent to such

interception." 18 U.S.C. § 2511(2)(d); *see also In re Google*, 806 F.3d at 142-43 ("Because the defendants were the intended recipients of the transmissions at issue . . . we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act.").

As Plaintiffs concede that Defendants were the intended recipients of the communications (Compl. ¶¶ 104, 107, 110, 113, 116, 119), Plaintiffs rely on the exception to Section 2511(2)(d), which reinstates liability so long as the "communication is intercepted *for the purpose of* committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d) (emphasis added). Accordingly, to invoke the crime-tort exception, the Third Circuit requires that the "plaintiff . . . plead sufficient facts to support an inference that the offender intercepted the communication for the *purpose* of a tortious or criminal act that is *independent* of the intentional act of [intercepting]." *In re Google*, 806 F.3d at 145 (emphases added) (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("Congress chose the word 'purpose' for a reason. Therefore, the offender must have as her objective a tortious or criminal result.")).

Here, Plaintiffs allege that "Defendants' acquisition of sensitive communications . . . [later] disclosed to the Tracking Tool Providers was done for purposes of committing": (1) an invasion of privacy; (2) a breach of confidence; (3) a breach of fiduciary duty; (4) a violation of HIPAA; (5) a violation of the New Jersey Data Protection Law, N.J. Stat. Ann. § 56:8-166.4, *et seq.*; (6) a violation of the NJCFA; and (7) a violation of the IDCSA. (Compl. ¶ 262.) Such an allegation is conclusory because, throughout the Complaint, Plaintiffs allege that Defendants' intended purpose in transmitting Plaintiffs' SHI to the Tracking Tool Providers was marketing and commercial gain—not to achieve an independent criminal or tortious outcome. (*Id.* ¶¶ 7, 8, 70, 124, 130-31, 148, 165 (alleging Defendants had an advertising, marketing, or otherwise

commercial purpose).) Plaintiffs' claim additionally fails because the alleged tortious or criminal actions were not independent of the act of intercepting. Rather, the alleged tortious or criminal acts were the mere byproducts of the interception itself. *See In re Google*, 806 F.3d at 145 ("[T]he plaintiffs point to no legal authority providing that the exception to § 2511(2)(d) is triggered when, as here, the tortious conduct is the alleged wiretapping itself."); *see also Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, [S]ection 2511 applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

Accordingly, the Court dismisses Count Seven without prejudice for failure to state a claim upon which relief can be granted.

*8. Violations of the NJCFA (Count Eight)*

To state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *In re Insulin Pricing Litig.*, No. 17-699, 2024 WL 416500, at *34 (D.N.J. Feb. 5, 2024) (quoting *Neale v. Volvo Cars of N. Am., LLC*, No. 10-4407, 2021 WL 3013009, at *9 (D.N.J. July 15, 2021)). An "'[u]nlawful practice' under the NJCFA can be affirmative acts, knowing omissions, or regulation violations." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 545 (D.N.J. 2013) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). A plaintiff bringing a claim under the NJCFA must also meet Rule 9(b)'s heightened pleading standard. *In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 381 (D.N.J. 2024). Under Rule 9(b), "the pleadings must state [with particularity] what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss."

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (collecting cases).

Here, Plaintiffs allege that: (1) L.S. visited the Xarelto Website in or around May 2025; (2) T.W. visited the Remicade Website in or around September 2025; (3) Defendants failed to inform L.S. and T.W. that they would disclose SHI to unauthorized third parties; (4) and Defendants intended to mislead Plaintiffs to rely on their misrepresentations and omissions. (Compl. ¶¶ 18, 53, 276-77.) These pleadings, however, fall short of stating a claim for an NJCFA violation because the Complaint is devoid of allegations as to how Defendants' knowing omissions were intended to cause L.S. and T.W. to transact on their Pharmaceutical Websites. *See Thomas v. Navy Fed. Credit Union*, No. 23-1308, 2023 WL 2992643, at *2 (D.N.J. Apr. 17, 2023) (dismissing NJCFA claim where the complaint failed to allege that the defendant intended for the plaintiff to rely on its omissions). Moreover, the Complaint fails to allege that Plaintiffs suffered an ascertainable loss beyond broadly asserting that Plaintiffs' SHI had pecuniary value. (*See* Compl. ¶¶ 132-37 (alleging, without quantifying, that SHI has monetary value)); *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010) (noting that an ascertainable loss must be "definite, certain[,] and measurable . . . rather than one that is merely theoretical." (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009))).

Accordingly, the Court dismisses Count Eight without prejudice for failure to state a claim upon which relief can be granted.

*9. Violations of the IDCSA (Count Nine)*

To state a claim under the IDCSA, a plaintiff must allege that a supplier committed "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." *Weiskopf v. Tiny Cocoons, Inc.*, No. 23-71, 2024 WL 4972665, at *4 (N.D. Ind. Dec. 3, 2024) (quoting Ind. Code § 24-5-0.5-3(a)). Under the IDCSA, a plaintiff's claims can be categorized as:

"(1) uncured deceptive acts (which do not require a showing of an intent to defraud or mislead); [or] (2) incurable deceptive acts (which require such a showing)." *Tinnermon v. REV Recreation Grp., Inc.*, No. 19-336, 2023 WL 1765414, at *11 (N.D. Ind. Feb. 3, 2023).

Here, M.W. classifies his or her claim as one for an incurable deceptive act because M.W. alleges that Defendants knowingly and intentionally violated the IDCSA.[11] (Compl. ¶ 283) "To support a claim for an incurable deceptive act under the IDCSA, a plaintiff must allege a scheme, artifice, or device with intent to defraud or mislead[.]" *Freeman v. Ocwen Loan Servicing, LLC*, No. 18-3844, 2020 WL 7489033, at *17 (S.D. Ind. Dec. 21, 2020), *reconsideration granted in part*, No. 18-03844, 2021 WL 5140718 (S.D. Ind. Nov. 4, 2021) (citing *Davis v. Contractability.com, LLC*, No. 16-2999, 2017 WL 413290 (S.D. Ind. Jan. 31, 2017)). Such a claim must also meet Rule 9's heightened pleading standard. *Jasper v. Abbott Labs, Inc.*, 834 F. Supp. 2d 766, 773 (N.D. Ill. 2011) ("Without actual written notice . . . [plaintiff] may only recover . . . for an incurable deceptive act, which requires that she satisfy Rule 9(b)'s heightened pleading standard.") Therefore, a plaintiff "must present facts to show what the fraudulent or deceptive act was, when and how it was committed, and how plaintiff relied on said deceptive act to her detriment." *Jones v. Bridgepoint Educ. Inc.*, No. 16-338, 2017 WL 2438461, at *4 (N.D. Ind. June 5, 2017) (citation omitted).

Like L.S. and T.W.'s claim under the NJCFA, M.W.'s claim under the IDCSA is deficient. Plaintiffs do not plead how Defendants' omissions induced M.W. into transacting on their Pharmaceutical Website as part of a scheme to defraud or in what way M.W. relied on that

[11] For an incurable deceptive act, there is no statutory notice requirement. *See* Ind. Code Ann. § 24-5-0.5-5 ("No action may be brought under this chapter unless (1) the deceptive act is incurable[;] or (2) the consumer bringing the action shall have given notice in writing to the supplier[.]")

deception to his or her detriment when M.W. visited the Simponi website in or around January 2025. (*See* Compl. ¶¶ 37-43.)

Accordingly, the Court dismisses Count Nine without prejudice for failure to state a claim upon which relief can be granted.[12]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 28th, 2026

[12] The Court does not reach the remaining arguments.